73   443
5ap625

CHARLES F. DOUGHERTY, Plaintiff, *v.* TRUSTEES OF THE VILLAGE OF
HORSEHEADS, Defendant.

*Trustees of a village — their duty to keep its streets in repair — action to recover for injuries — motion to have the complaint made more definite and certain or for a bill of particulars — review of a judgment of nonsuit.*

Under the provisions of sections 19, 21, 31 and 37 of chapter 486 of the Laws of 1855, it was the duty of the trustees of the village of Horseheads to keep the streets of the village in a reasonable condition of repair for the use of the public.

In an action brought against a village to recover damages for injuries alleged to have been sustained by reason of the alleged negligence of the defendant in failing to keep the streets of the village in a proper condition, if the defendant desires the complaint to contain a more accurate, definite and minute description of the place where the injuries were received, its remedy is by a motion to have the complaint made more definite and certain, or that a bill of particulars be rendered.

Upon what facts it should be left to a jury to say whether a plaintiff, who was thrown from his cutter by reason of its collision with a stone upon the street of a village, was guilty of contributory negligence, and whether such stone was an incumbrance on the street and such an obstruction thereof as to leave the street in an unsafe condition, and whether the trustees of such village were guilty of negligence in suffering the stone to remain in its street, considered.

Where a nonsuit has been granted, the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence, and to every legitimate inference that is warranted thereby.

MOTION by the plaintiff, Charles F. Dougherty, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance by an order made upon the dismissal of

the complaint at the Chemung County Circuit on the 14th day of December, 1891.

Plaintiff received injuries by the overturning of a cutter in which he was riding while passing from the hotel barn to the wagonway of Main street in defendant's village of Horseheads.

*Reynolds, Stanchfield & Collin*, for the plaintiff.

*Dailey & Bentley*, for the defendant.

HARDIN, P. J.:

Defendant's charter was amended by chapter 486 of the Laws of 1855. (Laws of 1855, p. 875.) Section 19 of that act confers upon the board of trustees power to make such general ordinances, by-laws and regulations as they deem proper and expedient for the good government and health of the village, and to have the management and control of the finances and of all property, real and personal, belonging to said corporation. Subdivision 5 of section 21 confers upon the trustees power " to prevent the encumbering of the streets, crosswalks and sidewalks, and to compel every person to keep snow and dirt from and off the sidewalks in front of the premises owned or occupied by such person." In section 31 it is provided that " The street commissioner shall have the general supervision of the streets, alleys and highways and public grounds. He shall act under the direction of the trustees, who may at all times limit, restrain and regulate him in the performance of his duties and assign him such lawful duties in respect to such streets, highways, alleys and public grounds as they deem proper." By section 37 the trustees " are authorized and empowered to raise money by tax * * * to pay all contingent expenses of the corporation, and also to carry into effect the several powers, provisions and privileges granted by this act." By section 44 the village is declared a separate road district, and it is provided " The trustees shall have power to regulate, amend and construct cross and sidewalks, and to pave, plank, grade, flag, straighten, widen, discontinue, alter and clean the streets, highways, bridges, sidewalks, drains and sewers of said village, *and to prevent the incumbering of the same in any manner, and to protect the same from encroachment and injury.* * * * "

We think, under the provisions of the charter, the defendant was

clothed with power to regulate its streets, sidewalks and the approaches thereto within the limits of the public streets of the village, and that it was charged with the duty of keeping the same in a reasonable condition for the use of the public. (*Sherman* v. *The Village of Oneonta*, 49 N. Y. St. Repr. 267, and cases cited in the opinion; *Goff* v. *The Village of Little Falls*, 47 id. 729; *Stebbins* v. *The Village of Oneida*, 23 id. 702; *Pomfrey* v. *The Village of Saratoga Springs*, 104 N. Y. 459; *Nelson* v. *The Village of Canisteo*, 100 id. 89.) Plaintiff. in his complaint alleges that on the 7th day of January, 1887, upon the invitation of Gilmore, he was riding in a cutter, to which was hitched a horse, along Main street of the village, and that "while so passing upon said street the cutter struck and was driven, without the fault or negligence of plaintiff or said Gilmore, against and upon a large stone or rock within said street, and was thereby overturned and broken ; this plaintiff and said Gilmore were thrown therefrom, and this plaintiff thereby and therefrom suffered and sustained serious, grievous bodily injuries,. whereby he was caused great bodily pain and mental anguish," and the complaint further alleges " That said large stone or rock was an illegal obstruction in said highway, and was dangerous and liable, if not certain, to cause injury to persons passing upon said highway, in vehicles which strike against or pass upon it. That the street commissioner and the board of trustees and the other officers of said village well knew, before the said accident and the said injury to plaintiff, that such rock was within said street, and was an illegal and dangerous obstruction thereto, and the injuries to plaintiff and all their consequent results were caused by the negligence, inattention and carelessness of said commissioners and said board of trustees or of the said board of trustees and their failure to fulfill and perform their duties and obligations as such officers, and not to any extent or in any degree by the carelessness or negligence of said plaintiff or said Gilmore." Criticism is made by the defendant upon the complaint. We think it sufficiently stated a cause of action, and that the language we used in *Sherman* v. *The Village of Oneonta* (*supra*) may be appropriately applied as an answer to the criticism of the defendant. In that case we said : " If the defendant desired the complaint to contain a more accurate, definite and minute description of the place

where the injuries were received, it should have sought its remedy by a motion to have the complaint made more definite and certain, or that a bill of particulars be rendered. The defendant was not misled by the language of the complaint. The evidence that was received in respect to the location where the injuries took place was admissible. There is no available force in the criticism made of the complaint." In the course of the decision delivered by the trial judge at the close of the evidence, he observed, correctly, we think, that " There is no doubt that the municipality have the duties to keep the streets in repair for those passing along the streets." It appeared by the evidence that the west line of Main street is ten feet west of the west line of the wagon or driveway, and adjacent to the south side of the driveway upon the street, and that it is one foot from the street line to the sidewalk, and that the sidewalk is some six feet, and there is a grass plot or lawn about three feet, and that in the lawn or grass plot is a row of trees extending southerly, and north of the most northerly tree was the place of the stone which caused the overturning of the cutter in which the plaintiff was riding. The stone was some sixteen inches across east and west and twenty inches across north and south, and one foot through up and down ; and that at the time of the accident the stone was three feet and six or eight inches north of the tree. It appeared that the stone was placed in that position at the instance of the owner of the Platt House, by one Jacob Greatsinger, while he was acting for or in behalf of the street commissioner of the village. The avowed purpose of the stone was to protect the tree from being driven against by persons driving upon the street, or from the street to the barn. It also appeared by the evidence that upon the occasion of the injuries the stone was covered with snow, and was not readily seen, although on behalf of the defendant several witnesses testify that the snow was not entirely over the stone, and that it was visible. It also appeared that the north end of the stone was five or six inches south of the regular beaten track. When the injuries were received the horse was upon a slow or jog trot, although some evidence was given tending to show greater speed. When the right runner of the cutter struck the stone the cutter tipped over, and the plaintiff struck his hip upon the snow of the beaten track, and Gilmore fell upon him, and he received quite extensive injuries, for

which this action is brought. We think no error was committed by the trial judge in holding that the question of whether the plaintiff was free from contributory negligence or not, was a question for the jury. We are also of the opinion that it was a question of fact whether the stone was an incumbrance of the street, and such an obstruction thereof as to leave the street in an unsafe condition, and that it was for the jury to determine whether the defendant had been guilty of negligence in suffering the stone to remain in the condition in which it was, as disclosed by the evidence. Even if it be assumed that the stone was not placed there by the direction of the defendant, it had remained a sufficient length of time to arrest the attention or notice of the defendant or its officers, and if it was an incumbrance and a dangerous object to be left in the street in the manner in which it was suffered to remain, it became the duty of the defendant to remove the incumbrance so as to leave the street in a reasonable condition for the use of the public. (*Rehberg* v. *Mayor*, 91 N. Y. 137 ; *Kunz* v. *City of Troy*, 104 id. 344 ; *Langlois* v. *City of Cohoes*, 58 Hun, 226.) It appears that the street in question was one extensively used by the people frequenting the village. Taking the evidence produced upon the trial most favorable to the plaintiff, we are of the opinion that the question whether the defendant was guilty of negligence or not was one which should have been submitted to the jury. It must be borne in mind that where a nonsuit has been granted the plaintiff is entitled to the benefit of every fact that the jury could have found from the evidence and to every legitimate inference that is warranted by the evidence. (*McNally* v. *The Phœnix Ins. Co.*, 50 N. Y. St. Repr. 681.) We are of the opinion that there was more than a scintilla of evidence to uphold the plaintiff's case, and, therefore, the cases of *Hemmens* v. *Nelson* (138 N. Y. 529), and *Corning* v. *Troy Iron & Nail Factory* (44 id. 577), and *Dwight* v. *Germania Insurance Company* (103 id. 341), and *Hall* v. *Stevens* (116 id. 210), are not applicable to the case before us.

We are of the opinion that the nonsuit was improperly granted, and that a new trial should be ordered.

MARTIN and MERWIN, JJ., concurred.

Motion for a new trial granted, with costs to abide the event.